**UNITED STATES DISTRICT COURT**

DISTRICT OF COLUMBIA

**FILED**

APR - 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

#28523-077

Rojelio Roger Galindo, Plaintiff

F.C.I. - LA TUNA
Po box 3000
ANTHONY, NEW MEXICA  88021

vs

Roberto Gonzales or his Predecessor Attorney
General, in his official and personal capacity;
Harley Lappins, Director, in his individual and
official capacity; Bureau of Prisons is sued as
a corporation and unit of the United States of
America; Dennis Smith, Warden, in the official
and individual capacity; Janice M. Killian and
her estate, in her official and individual
capacity as present and retired Warden; Pete
Hernandez, Health Services Administrator, in
his official and individual capacity; D. Tharp,
Clinical Medical Director, in his official and
individual capacity; Suzanne Hastings, Warden,
in her official and individual capacity; Wayne
Hortman, Associate Warden, in his individual
and official capacity; Willie Contreras,
Assistant Health Service Administrator, in his
official and individual capacity; Reuben Borrego,
Laundry Foreman, in his official and individual
capacity; Ismael Jacquez, Executive Assistant,
in his official and individual capacity; Q. Byrum
Hurst, Jr., Private Attorney, in his individual
and official capacity; Brad Eskridge, Associate
Warden, in his official and individual capacity;
Richard Peckham, Medical Doctor, in his official
and individual capacity; Chuck Gray, Trust Fund
Supervisor, in his official and individual
capacity; Jesus Gonzalez, Unit Manager, in his
official and individual capacity; and does 1 to
60 Defendants.

Civil Case No._____

COMPLAINT FOR DAMAGES

**MEDICAL MALPRACTICE**

**Refusal to supply proper
medical care, conspiracy
to violate civil, human
and constitutional rights
under the Rico Statute.**

Case: 1:08-cv-00627
Assigned To : Huvelle, Ellen S.
Assign. Date : 4/9/2008
Description: Pro Se General Civil

The above-named Defendants are being sued in the District of Columbia because

the main Defendants are residents of the greater District of Columbia area, and

the Bureau of Prisons' headquarter is in Washington, DC.  According to the

Statute, this litigation can be brought in the District of Columbia and with

good cause as stated.  The Plaintiff believes that he is in the correct Court

and would like to exercise his rights to sue the Attorney General and his

predecessor, and the Director of the Bureau of Prisons, in the Nation's Capitol.

1

That the Defendants were made aware of these serious violations and continue to ignore Plaintiff's prayer for medical help or relief. Plaintiff authored many letters and other written communications to these Defendants, who continue to turn a "deaf ear" to his medical needs, rendering a serious, deliberate indeference to the severe wanton of pain Plaintiff has suffered over the past five (5) plus years. Plaintiff cannot take even one step, without suffering a wanton of pain to his body. The Defendants have been made aware of the pain that Plaintiff encounters, but still refused to assist or render any type of **Medical Care.** These Defendants, allowed their subordinates to lie and continue to lie to Plaintiff and to deprive him of proper medical treatment for over five years. Plaintiff has been made a mockery of, by Bureau of Prison's medical staff when he made requests for medical treatment. He has been denied medical treatment more times than he was ever treated. The medical care that was rendered, was below human services, and was performrd by incompetent, so-called medical personnel. The Defendants, refused to release Plaintiff's medical records and refused to allow Plaintiff to be seen or examined by a medical specialist. Plaintiff was denied MRIs, X-Rays and other medical treatment, which could have made a world of difference in his pain and suffering. Plaintiff was given pain pills or medication, which consisted of Ibuprofen (800mg), Acetamino-phen (500mg) and Amitriptuline (150mg), all of which caused bleeding in the stomach and other illnesses that worsened the pain on a scale of from 1 to 10, with 10 being the worst; a number $10\frac{1}{2}$. Plaintiff needs to have surgery to his foot, ankle, and knee, in order to correct the problem, but the same is being denied daily. In order for justice to run its course, this case must go to trial in the District of Columbia.


<u>JURY TRIAL DEMANDED ON ALL ISSUES TRIALABLE</u>

## I. PLAINTIFF:

(A)    Plaintiff's Name:  Rojelio Roger Galindo
       Plaintiff's Inmate Number: 28523-077
       Prison or Jail:  Federal Correctional Institution
       Mailing Address: P.O. Box 3000, Anthony, NM 88021

## II. DEFENDANTS:

The full name of the defendant(s), official position, mailing address, and
place of employment.

(1)    Defendant's Name:  Roberto Gonzales
       Official Position: Attorney General
       Mailing Address:   10th Ave. at Constitution NW, Washington, DC 20530
       Employed at:       U.S. Department of Justice

(2)    Defendant's Name:  Harley Lappins
       Official Position: Director
       Mailing Address:   320 First St., NW, Washington, DC 20534
       Employed at:       U.S. Bureau of Prisons

(3)    Defendant's Name:  Dennis Smith
       Official Position: Warden
       Mailing Address:   United States Penitentiary, 1 Federal Way, Atwater,
                          CA 95301
       Employed at:       U.S. Bureau of Prisons

(4)    Defendant's Name:  Janice M. Killian
       Official Position: Warden
       Mailing Address:   P.O. Box 1000, Anthony, NM 88021
       Employed at:       U.S. Bureau of Prisons

(5)    Defendant's Name:  Pete Hernandez
       Official Position: Health Services Administrator
       Mailing Address:   P.O. Box 1000, Anthony, NM 88021
       Employed at:       U.S. Bureau of Prisons

(6)    Defendant's Name:  D. Tharp
       Official Position: Clinical Medical Director
       Mailing Address:   P.O. Box 1000, Anthony, NM 88021
       Employed at:       U.S. Bureau of Prisons

(7)    Defendant's Name:  Suzanne Hastings
       Official Position: Warden
       Mailing Address:   2600 S. Second St., Pekin, IL 61555-7000
       Employed at:       U.S. Bureau of Prisons

(8)    Defendant's Name:  Wayne Hortman
       Official Position: Associate Warden
       Mailing Address:   P.O. Box 1000, Anthony, NM 88021
       Employed at:       U.S. Bureau of Prisons

```
(9)   Defendant's Name:   Willie Contreras
      Official Position: Assistant Health Services Administrator
      Mailing Address:   P.O. Box 1000, Anthony, NM 88021
      Employed at:       U.S. Bureau of Prisons

(10)  Defendant's Name:   Reuben Borrego
      Official Position: Laundry Foreman
      Mailing Address:   P.O. Box 1000, Anthony, NM 88021
      Employed at:       U.S. Bureau of Prisons

(11)  Defendant's Name:   Ismael Jacquez
      Official Position: Executive Assistant
      Mailing Address:   P.O. Box 1000, Anthony, NM 88021
      Employed at:       U.S. Bureau of Prisons

(12)  Defendant's Name:   Brad Eskridge
      Official Position: Associate Warden
      Mailing Address:   4211 Cedar Springs Rd., Dallas, TX 75219
      Employed at:       U.S. Bureau of Prisons

(13)  Defendant's Name:   Q. Byrum Hurst, Jr. #74082, Hurst & Morrissey PLLC
      Official Position: Attorney At Law
      Mailing Address:   213 Woodbine St., Hot Springs, AR 71901
      Employed at:       Hurst & Morrissey PLLC

(14)  Defendant's Name:   Roofing Contractor
      Official Position: Contractor (private)

(15)  Defendant's Name:   Richard Peckham
      Official Position: Medical Doctor
      Mailing Address:   P.O. Box 9500, Texarkana, TX
      Employed at:       U.S. Bureau of Prisons

(16)  Defendant's Name:   Chuck Gray
      Official Position: Trust Fund Supervisor
      Mailing Address:   P.O. Box 1000, Anthony, NM 88021
      Employed at:       U.S. Bureau of Prisons

(17)  Defendant's Name:   Jesus Gonzalez
      Official Position: Unit Manager
      Mailing Address:   P.O. Box 1000, Anthony, NM 88021
```

## I.   INTRODUCTION

1.   This is a Civil Suit involving United States Department of Justice, Bureau

of Prisons employees, and private citizens and contractor.

2.   Beginning in 2001 and continuing thereafter, the above named defendant,

United States Bureau of Prisons and its employees, engaged in a conspiracy to

deprive plaintiff, Rojelio Roger Galindo of his rights to proper medical care

and treatment to include surgery on his foot, ankle, knee, hip and back, with

which he had absolutely no involvement in ascertaining any outside medical care

for himself.  As a result of the defendant officer's action, Mr. Rojelio Roger

Galindo, suffers serious medical problems, beyond repair.

3.    Plaintiff never gave up hope that the truth would prevail, and eventually,

it did.  More than a decade after plaintiff was injured as a semi-professional

baseball player, he was again reinjured and continued to be injured by the def-

endants, and denied medical treatment, while in federal custody of the United

States Attorney General.

4.    Attorneys, working pro-bono at the Attorney Services of Louisiana, Inc.'s

school, were finally able to petition the court in hopes to overturn his convic-

tion and secure his release from prison on the basis of ineffective assistance

of counsel.  Motion pending.

5.    Specifically, by the Summer of 2006, plaintiff was able to take advantage

of recent technologically advanced medical legal research to conclusively esta-

blish his position on the conspiracy to deprive him of his medical needs.  He

was rendered incompetent care.

6.    Plaintiff was able to finally, obtain some relief through the assistance

of pro-bono services of law professors and their law students, to bring this

case to court.  The evidence points to systematic failures throughout the entire

medical services, that show deliberate indiference to Mr. Galindo's medical need

for medical treatment in federal prison's care and control.

7.    Plaintiff contends that although he has been provided with aspirin, this

may not constitute adequate medical care.  If deliberate indifference caused an

easier and less efficacious treatment to be provided, the defendants have viola-

ted plaintiff Galindo's Eight Amendment Rights, by failing to provide adequate

medical care and to consider Mr. Galindo's serious medical needs.

### VENUE

8.    Venue is proper, pursuant to 28U.S.C. § 1391(e).  Plaintiff is presently

5

a resident at the Federal Correctional Institution, in Latuna, Texas at the time
this suit is filed; and at the time of his personal head, knee, neck, hip and
back injury, complained of herein, he was an inmate resident at the federal
Correctional Institution, Texarkana, Texas.  All defendants are employees of the
United States Bureau of Prisons, and the acts and omissions complained of herein,
took place in the United States Bureau of Prisons in Texarkana, Texas, under the
control of the Attorney General.  Bureau of Prisons' main offices and director
are located at: 320 First St., NW, Washington, DC.

## STATEMENT OF FACTS

9.   That on or about March 21, 2002, plaintiff Rojelio Roger Galindo, was an
inmate and in the sole care, control and custody of the United States Bureau of
Prisons at the Federal Correctional Institution at Texarkana, Texas.

10.  That on or about March 21, 2002, at approximately 5:00 p.m., plaintiff,
Rojelio Roger Galindo, was standing outside a federal building, on government
property, at the prison's gymnasium at the federal Correctional Institution at
Texarkana, Texas, waiting to go to his assigned prison job, when a slab of
**roofing material** was blown off the roof of a forty-foot building, landing on top
of Mr. Rojelio Roger Galindo's head, damaging his head, neck, shoulders, back,
hips, legs, knees, ankles and feet.

11.  That the work being done by the private contractor or construction crew on
top of the building that plaintiff was standing next to and could not see what
was going on up in the air, 35 to 40 feet above the ground.

12.  That plaintiff was severely injured when a piece of building material was
rolled off the roof and injured him over his whole body, causing pain that
became a daily hindering to him.

13.  That plaintiff was struck with such force by the building material, that he
was crushed to the ground and received severe personal injury to his body, over
100%. He has since suffered a wanton of pain and Bureau of Prisons has been

6

deliberately indifferent to his needs.

14.  That immediately following the accident, the plaintiff was rushed to the health services' examination room, placed on a gurney and given a neck brace. There were no other medical treatment rendered.  From 2001 until the present, plaintiff Galindo, suffers from pain to his feet, ankles, knees, legs, hips and back and since, has been refused medical treatment.

15.  Plaintiff has given notice to the Federal Bureau of Prisons on numerous occasions, of the situation that occurred on or about March 21, 2002, and he has exhausted all his attempts to remedy this situation prior to seeking a formal complaint.  Please refer to the group of exhibits hereto attached.

16.  Plaintiff was denied medical treatment at F.C.I. Texarkana, after his injury, which was caused by negligence on behalf of the Bureau of Prisons.  He was denied the right to be examined by a specialist or a medical officer who was competent and skilled in medicine.

17.  Plaintiff was transferred from F.C.I. Texarkana to F.C.I. Latuna; where the conspiracy to deprive him of medical treatment and health care continued.  Plaintiff continues to suffer and live in pain, due to the mistreatment of medical care.

18.  Plaintiff suffers from a wanton of pain and medical damage to his body, caused by deliberate indifference to plaintiff's medical needs.  Plaintiff stated a claim in numbers 1 to 18, above.

19.  Plaintiff has been denied medical care, medical specialist, medical attention and a right to medical surgery and proper medical special shoes and brace, and other medical needs and care.  All medical specialists has been denied to plaintiff, without due process of law.  Plaintiff has a right to decent conditions in prison, and basic human needs.  The Eight Amendments' prohibition of **cruel and unusual punishment**, also protects plaintiff's rights to safe and somewhat, decent conditions in prison.  Plaintiff challenges prison conditions to deprive him of basic human rights.

7

20.  The Plaintiff is due to enjoy such basic needs, shelter, food, exercise, clothing, sanitation, hygiene, and medical care, as well as safety.  All these rights must be supplied by the Attorney General or his assignee.

21.  Plaintiff contends that serious denial of medical care caused him to suffer serious and a wanton of pain, which show deliberate indifference to his medical needs.

22.  Defendant's have failed to develop a reliable screening system for inmates entering F.C.I. Latuna, as shown by the lack of testing for TB and Syphilis or other diseases or injuries.  There is no follow-up system for treating **chronic care patients** [inmates] or chronic diseases, and inmates wait months for appointments to specialty clinics.  While defendants claims they have new procedures to monitor medical records, the evidence has shown that medical records are consistently lost, misplaced, mislaid and fail to follow the inmate upon transfer. Medical staff has failed to maintain the medical records routinely by not entering current information or by not referring to the record when the inmate arrives at sick call.  The procedure for sick call relies too heavily on incompetent staff, by allowing them to diagnose and dispense medication, without proper medical supervision by trained medical staff.

23.  There are not enough trained physicians and physical assistants to cover the shifts and the numbers of inmates.  Diabetics are not monitored properly with incorrect doses of insulin given without reference to the medical files.

24.  While the staffing might be legally adequate for the dental clinic, there are significant delays in receiving appointments and there is the constant problem of keeping track of the inmate's medical records.  Plaintiff made written request for his medical and dental record on several occasions, but received nothing.

25.  The staffing in the mental health area is woefully short.  The three psychologists there, can barely keep up with emergencies, much less treat inmates for chronic problems.

The psychiatric time is limited to two afternoons per week.  90% of psychologist time goes to DAP or drug treatment unit students, who take classes daily.  As the chief psychologist indicated, F.C.I. Latuna, needs at least three more psychologists and clerical staff to handle reports and filing.  At the present, there are no support medical staff whatsoever.

26.  As with regular medical services, no proper screening takes place to determine mental health problems.  A system must be developed upon entering FCI Latuna.  By denying plaintiff Galindo, proper medical treatment, shows a deliber- ate indifference to his psychiatric and medical health needs. (717 F. Supp. § 867-68).

27.  Plaintiff Galindo, contends that, due to his serious medical needs, and the assault by the Bureau of Prisons, where, through their negligence and incompete- nce, he was attacked by falling roofing material, on government's property, and cause severe damages and a wanton of pain, which result in conditions being ignored and then treated with mental health medication and not medically approved medication, for pain or the problem complained of.  See **Yarbrough v. Roach, 736 F. Supp. 318 (D.D.C.)(1990).**

> "Plaintiff, a male prisoner incarcerated at the D.C. Jail,
> who suffers from multiple sclerosis, was granted a preliminary
> injunction to obtain adequate medical care.  The district court
> as noted below, held that the defendants exhibited deliberate
> indifference in their failure to provide plaintiff with
> appropriate medical care.  Plaintiff has been confined at the
> D.C. Detention Facility Infirmary since the Summer of 1989.
> Plaintiff has NOT been examined by a D.C. Jail Infirmary
> physician from the time of his confinement to that facility
> through February 16, 1990.  Further, no D.C. Jail Department
> of Corrections, or D.C. General Hospital Neurologist examined

> plaintiff from August 1, 1988 through February 16, 1990.
> The defendants have not examined the plaintiff in order
> to establish a [sic] appropriate plan to provide adequate
> medical services.  Plaintiff has not received physical
> therapy on a regular basis."(736 F. Supp § 319-320).

28.  Plaintiff Galindo, contends that he was denied access to medical treatment and deprived of a right to be treated by a medical professional, which resulted in deliberate indifference to his medical needs.  See **Hathaway v. Coughlin, 841 F. 2d 48 (2nd Cir. 1988).**  Plaintiff Galindo, suffered severe pain over four (4) years due to prison officials delay in arranging surgery to repair damage in his hip, ankle, knee, neck and back.

29.  The plaintiff was denied medical surgery to relieve or repair damage to his body.  See **Hathaway v. Coughlin, 841 F.2d 48 (2nd Cir. 1988).**

30.  "Plaintiff suffered severe pain over two years due to prison officials delay in arranging surgery to repair broken surgical pins in his hip.  The court found that this substantial delay alone, raised a sufficient question of fact as to whether the official's conduct constituted deliberate indifference to the plaintiff's medical needs.

31.  Defendants evidence deliberate indifference to plaintiff in their failure to provide medication and surgery for his ankle, knee, hip and back, not to mention, his foot injury, refusal to provide medical care, unless it was an "emergency", and doctor's canceling of plaintiff's appointment with knee, foot and back chronic specialist.  See also **Ellis v. Butler, 890 F.2d 1001 (8th Cir. 1989).**  The Plaintiff contends that prison officials [defendants] violated plaintiff's Eight Amendment Rights by failing to provide appropriate medical care to plaintiff's serious urological problems.  Defendants denied appropriate medication.

32.  Failed to transport plaintiff to be examined by a urology specialist and

to provide necessary follow-up medical treatment, violates the Law.  See

**Wood v. Sunn, 865 F.2d 982 (9th Cir. 1988).**

33.    Plaintiff contends that four hours delay in providing plaintiff prisoner
with proper Legal medical surgery care to his foot, knee, ankle, hip and back
was "deliberate indifference".

34.    Plaintiff was denied medical treatment, which resulted in him suffering a
wanton of pain, which come from being deprived of surgery.  Even where special-
ists examined the plaintiff, the defendant still failed to follow the specialist
recommendation for certain surgery to correct the medical problem.

35.    Plaintiff contends that he was lied to, delayed and deprived of medical
treatment for four years, while he suffered a wanton of pain.

36.    That the treatment  plaintiff was given, by defendant, consist of Ibuprofen
800 mg #77935; Acetaminophen 500 mg #77941; and Amitriptuline 150 mg, along with
other medication that are used to treat mental patients.  What is pain medication?

37.    Which resulted in causing plaintiff to be hooked and dependent on the drugs.
The medication that was prescribed to plaintiff, was found to be medication to
**treat mentally ill** patients.  Medication that caused additional problems and
worsen plaintiff's pain.

38.    Plaintiff suffers from a wanton of pain and not from any mental conditions.
Plaintiff believes the medical allegations of excessive and unnecessary medicat-
ion administered over plaintiff's objection, implicates Eight Amendment concerns.

39.    Four years delay in providing plaintiff with medical treatment for wanton
of pain in need of serious surgery is sufficient to state an Eight Amendment
claim.  See **Brown v. Hughes, 894 F.2d 1533 (11th Cir. 1990); Battle v. Central
State Hospital, 898 F.2d 126 (11th Cir. 1990);** and **Reed v. Dunham, 893 F. 2d 285
(10th Cir. 1990).**

40.    Plaintiff contends that in general, the defendants and prison officials have
acted with deliberate indifference when there are demonstrated a serious medical

need, and there has been a failure to:

    A.  Provide general and special medical treatment.
    B.  Provide medical treatment.
    C.  Provide and monitor medication.
    D.  Follow-up medical care.
    E.  Make referrals to specialists.
    F.  Take appropriate tests or provide recommended surgery.
    G.  Perform thorough examination and elect the correct specialist.
    H.  Arrange for transportation to hospital or specialty clinics.
    I.  Provide the correct medication that will service the pain
       condition.

41.    A medical need is "serious" if it has been diagnosed by a specialist or

a Physician, as mandating treatment or one that is obvious that even a layperson

would easily recognize.

42.    The necessity for a doctor's attention.  **Duran v. Anaya, 642 F. Supp. 510,**

**524 [N.M. 1986]** citing **Laaman v. Helgemoe, 437 F. Supp. 269, 311 [N.M. 1977];**

**Ramos v. Lamm, 639 F. 2d [10th Cir. 1980].**

43.    Plaintiff Galindo, shown herein that deliberate indifference to his serious

medical needs is shown when prison officials have prevented plaintiff from recei-

ving recommended treatment or when a plaintiff [inmate] is denied access to medi-

cal specialist, treatment and competent medical personnel, capable of evaluating

the need for treatment.  **Ramos,** supra at 575.  And **Inmates of Allegheny City**

**Jail v. Pierce, 612 F. 2d 754, 762 (3rd Cir. 1979).**  The knowledge of the need

for medical care and intentional refusal to provide that care, has consistently

been held to surpass negligence, and constitute deliberate indifference.

**Anacala v. Prison Health Services, Inc., 769 F.2d 700, 704 (11th Cir. 1985).**

44.    Defendant's prison officials, deliberately denied plaintiff, serious medical

care to his ankle, foot, legs, knees, hip, back, neck and head, after he suffered

the bale of roofing material falling from the Bureau of Prisons' building, onto

his head, on March 21, 2002.  Defendant's failure to provide plaintiff with

competent medical care, or to perform x-rays and surgery and refer plaintiff to

orthopedic surgeon, despite plaintiff Galindo's repeated requests over a four-

year period, is a violation of the Eight Amendment.

45.    Plaintiff Galindo, has concluded herein that defendants set forth claims
of inadequate treatment, request for specialists, medical care pursuant to the
Eight Amendment, and deliberate indifference, by alleging all the serious
medical needs or conduct on the part of prison officials, who exhibited
"deliberate indifference" to plaintiff's medical needs.

46.    The following case summaries demonstrate examples in which all the viola-
tions of the Eight Amendment and deliberate indifference was found.

47.    The treatment of a prisoner in prison and the conditions under which he or
she is confined are subject to Eight Amendment scrutiny. **Helling v. McKenney,**
__ U.S. __ 113 S.Ct. 2476, 2480; 125 L.Ed. 2d 22 (1993). Prison officials may
not use excessive physical force against prisoners. **Hudson v. McMillian, 503 U.S.**
1, 112 S.Ct. 995, 117 L. Ed. 2d 156 (1992) and under a duty to provide humane
conditions of confinement.  Accordingly, prison officials must ensure that
inmates receive adequate food, clothing, shelter, safety and medical care.  Pri-
son officials must also take "reasonable measure to guarantee the safety of
Inmates".  See **Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S, Ct. 995, 117 L.Ed.2d**
**156 (1992)** including protecting prisoners from violence at the hands of other pri-
soners.

48.    A successful Eight Amendment claim must ordinarily satisfy a two-prong test.

(1)    The first prong is an objective inquiry that asks whether the inmate was
deprived of "the minimal civilized measure of life's necessities".  **Wilson v.**
**Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2323, 115 L.Ed.2d. 271 (1991).**

(2)    The second prong ia a subjective test in which the plaintiff must demonstr-
ate that prison officials acted at least, with deliberate indifference, towards
his or her needs.  **Id.,** at 298-99.  The deliberate indifference standard contem-
plates a state of mind more culpable than negligence.  **Whitley v. Albers, 475**
**U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).**  Instead, prison
officials and defendants are subjectively culpable i.e., and must be held under

the Eight Amendment, and prison officials and defendants had knowledge of a substantial risk to the plaintiff's medical needs. See **Whitley v. Albers**, 475 U.S. 312,319, 106 S,Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

49.    The Defendants failed to prevent harm to plaintiff and his medical needs. Plaintiff showed that he is incarcerated under conditions posing a serious substantial risk of harm.   The issue then is, whether defendants, acting with deliberate indifference, exposed the prisoners to a sufficiently substantial "risk of serious damage to his future health and safety", whether the risk comes from a single source or multiple sources, or whether the plaintiff faces an excessive risk, for reasons personal to him, or because all prisoners in their situation, face such a risk. **Helling v. McKinney**, 509 __, __, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993).   However, even when prison officials actually know of a substantial risk to plaintiff's health and safety, they may be found free from liability, if they responded reasonably to the risk, even if no harm ultimately, was averted. **Farmer v. Brennan**, __, U.S. __, __, 114 S.Ct. 1970, 1982, 128 L. Ed. 2d 811 (1994).   Holding that the **Cruel and Unusual Punishment Clause** prohibits NOT only barbaric punishments, but also sentences that are disproportionate to the crime committed. **Id., at 284.**

50.    **Estelle v. Gamble**, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. _d 251 (1976), extended the reach of the Eight Amendment to create a constitutional obligation on the part of the government to provide prisoners adequate medical care. **Id.,** at 103-04.   Recognizing that prisoners must rely on prison authorities for the provision of medical treatment, the court reasoned that failure to provide adequate medical care is tantamount to physical torture, and that deliberate indifference to serious medical needs of prisoners therefore, constitutes the unnecessary and a wanton infliction of pain, prescribed by the Eight Amendment. **Boretti v. Wiscomb**, 930 F.2d 1150, 1154-55 (6th Cir. 1991); **Degidio v. Pung**, 920 F.2d 525, 529-30, 533 (8th Cir. 1990).

14

51.   Plaintiff believes he has satisfied the two prong test set forth above,
i.e., plaintiff satisfies both the objective and subjective components of an
Eight Amendment violation.   The plaintiff proved that his medical needs are
serious.  **Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2323, 115 L.Ed.
2d 271 (1991).**  The subjective component is met when a prison official acts
with deliberate indifference to a prisoner's serious medical need – the
deliberate deprivation of adequate medical care in response to a serious med-
ical need or the defendant's action or failure to act, despite his or her
knowledge of a substantial risk of serious harm to the prisoner.  **Helling v.
McKinney, __ U.S. __, __, 113 S.Ct. 2475, 2479–80, 125 L.Ed.2d 22 (1993);
Desrosiors v. Moran, 949 F.2d 15, 19 (1st Cir. 1991),** plaintiff carried his
burden of proof of both of these elements to establish a successful claim of
deliberate indifference.

52.   Plaintiff contends that the Eight Amendment claim is rooted in contem-
porary standards of decency.   Society does not expect that prisoners will have
unqualified access to health care, it offends contemporary standards of decency,
deliberate indifference to serious medical needs amounts to an Eight Amendment
violation.

53.   A medical need qualifies as serious, if it is one that has been diagnosed
by a physician  and mandating treatment, or one that is so obvious, that a lay
person would easily recognize the necessity for a doctor's attention.  **Cox v.
District of Columbia, 834 F. Supp. 439, 441 (D.D.C. 1992).**  Deliberate indif-
ference to a mental health and medical care of serious surgery to correct a
medical problem.  Plaintiff walks with a limp from pain, as his foot touches
the ground; due to the denial of surgery, plaintiff's right foot continues to
turn outward, to the far right, causing a wanton of pain and difficulty in
standing or walking.  The defendants treat  the wanton of pain with mental ill-
ness medication and other medication to wit Ibuprofen 800 mg #77935, Acetaminophen

Tylenol 500 mg #77991, and Amitriptuline 150 mg #77938, which does not relieve
the pain but cause further damages and other medical problems.

PARTIES

54.   Plaintiff Rojelio Roger Galindo, is a forty one (41) year old Mexican-
American man, a resident of Littlefield, Texas and a Citizen of the United
States.  He is confined to the Federal Correctional Institution at FCI Latuna,
pursuant to a federal conviction of drug trafficking.  Defendant Roberto Gon-
zales, is the Attorney General of the United States, with his home and federal
office located in Washington, DC.  He meets all the requirements to be sued in
the District of Columbia.  He is being sued in his personal and official capa-
city.  He is personally responsible for the actions of the Bureau of Prisons.
Defendant Gonzales, was made aware of these serious violations and denial of
medical treatment but failed to act and ignored plaintiff's cry for help.

55.   Defendant Harley Lappins, is the Director of the Federal Bureau of Prisons
who resides in Washington, DC and is a citizen of the United States, with his
offices located in Washington, DC.  He is sued in his personal and official
capacity.  He was or is personally in charge of the actions of all his subordi-
nates and employees.  He is in charge of the wrongful action that caused plain-
tiff to suffer denial of medical treatment, which led to assault and false
imprisonment, and engaged in the conduct complained of in the course and scope
of his employment and is sued in his individual capacity.

56.   Defendant Dennis Smith, is a warden of the Federal Bureau of Prisons, at
the Federal Penitentiary at Atwater, California, and was once the warden at
FCI Latuna, was duly appointed and sworn to protect and defend the Constitution
of the United States.  He was personally in charge of the control, care and
custody of a total of 1835 federal inmates at the three complex of FCI Latuna,
engaged in the conduct complained of in the course and scope of his employment
and conspired to deprive plaintiff of his rights to medical treatment, and

16

failed to protect plaintiff and to keep him out of harms way, and is sued in his individual capacity.

57.    Defendant Janice M. Killian, is a warden of the Federal Bureau of Prisons at FCI Latuna, where she is personally in charge of over 1800 inmates, charged to her custody, control and care, engaged in the conduct complained of in the course and scope of her employment, conspired with others to deprive plaintiff of medical care and illegally punished plaintiff without due process, and is sued in her individual capacity.

58.    Defendant Pete Hernandez, is a health service administrator of the Federal Bureau of Prisons, at FCI Latuna. He is personally in charge of the health care services of the inmates, and failed to protect plaintiff and to provide proper medical care, engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

59.    Defendant D. Tharp, is a physician and chief medical officer at FCI Latuna, employed by the Bureau of Prisons, in charge of the health and medical care of all inmates, charged to his care and control, engaged in the conduct complained of in the course and scope of his employment and is sued in his individual and official capacity.

60.    Defendant Suzanne Hastings, is a warden and a former warden at FCI Texarkana, Texas and was personally in charge of plaintiff, when he was damaged by a bale of roofing material that fell from a two (2) story building at FCI Texarkana, and engaged in conduct complained of in the course and scope of her employment and is sued in her individual and official capacity.

61.    Defendant Wayne Hortman, is an associate warden, employed by the Federal Bureau of Prisons at FCI Latuna, and engaged in conduct complained of in the course and scope of his employment, where he conspired to deprive plaintiff of a right to medical care, is sued in his individual and official capacity.

62.    Defendant Willie Contreras, Assistant Health Services Administrator, is employed by Bureau of Prisons at FCI Latuna, and engaged in conduct complained of, in the course and scope of his employment, where he conspired to deprive plaintiff of a right to medical care and made terroristic threats and verbal abuse, opposed to rendering medical care, and is sued in his individual and official capacity.

63.    Defendant Reuben Borrego, laundry foreman, is employed by Bureau of Prisons at FCI Latuna, and engaged in conduct complained of in the course and scope of his employment, where he personally took part in making plaintiff's medical life, pure hell and conspired to deprive plaintiff of special medical shoes to accommodate his medical problem.  Defendant lied and falsified documents to prevent plaintiff from obtaining special medical shoes and is sued in his individual and official capacity.

64.    Defendant Ismael Jacquez, Executive Assistant to Warden Janice M. Killian, is employed by Bureau of Prisons at FCI Latuna, and engaged in conduct complained of in the course and scope of his employment, where he committed terroristic acts by lying to the news media, television reporters, the general public, inmates' families, and to just about anyone he spoke to, is sued in his individual and official capacity.

65.    Defendant Q. Byrum Hurst, Jr., Attorney at Law, in private practice and a partner in the law firm of Hurst & Morrissey, where defendant Hurst failed to prosecute the civil case against the defendant, which resulted in the court dismissing the malpractice suit and conspiring with other defendants to deprive plaintiff of his right to medical treatment and is sued in his individual and personal capacity.

66.    Defendant Brad Eskridge, Associate Warden, employed by Bureau of Prisons, FCI Texarkana and is sued in his individual and official capacity.

67.    Defendant Richard Peckham, Medical Doctor, employed by Bureau of Prisons, FCI Texarkana and is sued in his individual and official capacity.

68.    Defendant Chuck Gray, Trust Fund Supervisor, employed by Bureau of Prisons, FCI Latuna and is sued in his individual and official capacity.

69.    Defendant Jesus Gonzalez, Unit Manager, employed by Bureau of Prisons, FCI Latuna and is sued in his individual and official capacity.

70.    Defendant, Bureau of Prisons, is a federal government corporation agency, as such, is responsible for the policies, practices, custody, care and control of all federal inmates, sentenced by a federal court, and medical care, safety and customs of the United States Department of Justice, its office of Professional standards, its personnel division, its medical health services division, and its prisons, as well as those of the directors, regional directors, wardens, and all level of employees.  The Bureau of Prisons is responsible for the acts of the defendant guards, officers and employees, while employed by the Bureau of Prisons and while acting in the scope of their employment.  Bureau of Prisons is controlled by the Attorney General.

71.    At all times relevant to this action, each of the named defendants acted in the scope of employment, and under color of the laws, regulations, and customs of the United States.

72.    Each defendant's actions constituted "state Action" and federal action, as defined under federal law.

73.    Because said actions were done with the knowledge and purpose of depriving plaintiff, who is a Mexican-American, of the equal protection of the law and/or equal priviledges, medical treatment, medical surgery and immunities under the law, and with racial animus toward the plaintiff, they also deprived plaintiff of his right to equal protection of the laws, under the Sixth Amendment and 42 U.S.C. § 1985.

74.   In furtherance of this conspiracy or conspiracies, the defendants, together with their coconspirators, each committed one or more of overt acts set forth above, including, but not limited to, the wrongful denial of surgery, and medical care, and fabricating, manipulation, alteration, and coercion of false medical records, and totally unreliable exculpatory evidence against plaintiff in a previously filed tort claim suit.

75.   The failure to expose and/or stop the malicious medical prosecution, false imprisonment, and wrongful medical care and medications, of plaintiff under the unconstitutional coercion of medical specialist to prevent them from being placed on contract to treat plaintiff and to give him the surgery to correct his injury.

76.   Defendants conspired and agreed with each other to where as an effort to unconstitutionally compel them to make false entry and false report into plaintiff's medical files.

77.   Said conspiracy or conspiracies, joint actions and overt acts, continue to this date and have caused and continue to cause plaintiff's constitutional rights to be violated and the injuries, pain, suffering, nervous breakdown, fear, mental anguish, detention, imprisonment, humiliation, defamation of character and reputation, and loss of freedom and deprived of medical care as set forth more fully above and below.

78.   The essence of conspiracy is the agreement to commit an illegal act. **Iannelli v. United States, 420 U.S. 770, 43 L.Ed.2d 616, 95 S.Ct. 1284 [1975]** cert. denied. **465 U.S. 1107, 80 L.Ed.2d 142, 104, S.Ct. 1613 [1984]**. The agreement must be between two or more persons. **United States v. Moss, 591 F.2d. 428 [8th Cir. 1979]**. A government agent or informant cannot be the only other member of the conspiracy. See e.g. **United States v. Mahkimetas, 991 F.2d 379, 383 [7th Cir. 1993]; Montgomery v. United States, 853 F.2d 83 [2nd Cir. 1988];**

**United States v. Escobar de Bright**, 742 F.2d 1196 [9th Cir. 1984].    The
Defendants herein, committed offense against the plaintiff, Rojelio Roger
Galindo, pursuant to **Title 18 U.S.C.** § **1117** [to commit murder]; **18 U.S.C.** §
**1201** [kidnapping]; and deprivation of rights to medical treatment and proper
surgery, an overt act in not required for violation of **18 U.S.C.** § **241**, to wit
a violation of plaintiff's civil rights, and violation of **Title 21 U.S.C.** §
**963, the Rico Act.**  See generally, **Grunewald v. United States, 353 U.S. 391, 1**
**L.Ed. 2d 931, 77 S.Ct. 963 (1957); Blumenthal v. United States, 332 U.S. 539,**
**92 L.Ed. 154, 68 S.Ct. 248 (1947).**  Also See **United States v. Shabini, 63**
**U.S.L.W. 4001 [U.S. Nov. 1, 1994].**  The defendants committed the overt act in
this conspiracy under **Title 18 U.S.C.** § **371.**  The defendants' concealment of
medical evidence, violated plaintiff's medical rights to be free to have proper
service for surgery.

## COUNT I

**42 U.S.C.** § **1985** and **Title 28 U.S.C.** § **1331** pursuant to **Bivins Act,** in viola-
tion of medical care.

79.    Plaintiff re-alleges Paragraph 1 through 78.

80.    Defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M.
Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie
Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge,
Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons individually,
jointly, and in conspiracy, caused the deprivation of medical care, proper sur-
gery, legal medication, false prosecution of plaintiff, and the continuation of
said wrongful denial of medical services by specialists, by lying, coercing,
constructing, altering, manipulating and fabricating the evidence and medical
records, which formed the basis for plaintiff's charging defendants with, with-
holding mental and medical records, which is vital to this case.  Defendants

withheld from the plaintiff and his attorneys information involved in cover-up in plaintiff's cause, which was destroyed and in additional to exculpatory evidence, which by given a false and incomplete version of events to government attorneys who represent defendants, who wrote false reports and gave false testimony and declarations, knowing the same to be false. And by the additional wrongdoing set forth above, thereby unconstitutionally depriving plaintiff of his liberty and medical care, mental health care and his liberty and violating his right to a fair and impartial hearing before the defendants to obtain treatment by specialists to correct plaintiff's medical problems, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

81.    The actions of the defendants in depriving plaintiff of his right to a fair and equal medical care and not to be wrongfully denied medical care, were the direct and proximate cause of the injuries to plaintiff, which are set forth above.

Wherefore, plaintiff demands judgement against defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons, for substantial compensatory damages, and because these defendants acted maliciously, willfully, wanton and/or with reckless disregard for plaintiff's constitutional rights, for substantial punitive damages, plus the costs of this action, attorney's fees and such other relief as this court deems equitable and just.

## COUNT II

### Claim for Deprivation of Medical Rights

82.    Plaintiff re-alleges Paragraphs 1 through 81.

83.    The actions of defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad

Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons, for substantial compensatory damages, and because these defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for plaintiff's constitutional rights, health and medical care for substantial punitive damages, plus the cost of this action, attorney's fees and such other relief as this court deems equitable and just.

## COUNT III

[**Title 28 U.S.C. § 1331** and **1346** due process claim for deprivation of access to medical care]

84.    Plaintiff re-alleges Paragraphs 1 through 83.

85.    Defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons individually, jointly, and in conspiracy, by their wrongful denial of medical care, medical surgery, mental care and by their resultant obstruction of justice, violated plaintiff's right to access medical care and medical surgery, favorable to the claims asserted herein, and by causing plaintiff to potentially forfeit several of his claims, to delay pursuing his other claims, for many years and to proceed without key evidence, in the Texarkana case assault from work by the roofing company that damaged plaintiff, on March 21, 2002, which remains suppressed or has been destroyed, lost, denied or otherwise diminished, due to the lapse in time, in violation of his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights to medical due process of law and access to proper medical treatment / surgery.

Whereas, plaintiff demands judgement against defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp,

Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons, for substantial compensatory damages, and because these defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for plaintiff's medical care, constitutional rights, civil rights, medical surgery rights, for substantial punitive damages, plus the cost of this action, attorney's fees and such other relief as this court deems equitable and just.

### COUNT IV

86.  Plaintiff re-alleges Paragraphs 1 through 85.

87.  Defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons individually, jointly, and in conspiracy, initiated a malicious attack on the medical care of plaintiff and without probable cause against plaintiff, and continued said denial of medical treatment, again without probable cause. Said medical surgery request was ultimately terminated in plaintiff's favor. The defendants' actions were done in a willful and wanton manner, and directly and proximately caused the injury and medical damages to plaintiff set forth above.

Wherefore, plaintiff demands actual or compensatory damages against defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons, and because these defendants acted in a malicious, willful and/or wanton manner toward plaintiff, punitive damages, such other and additional relief as this court deems equitable and just.

[State law claim for intentional infliction of emotional distress]

88.  Plaintiff re-alleges Paragraphs 1 through 87.

89.  Defendants Roberto Gonzales, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzales, and Bureau of Prisons individually, jointly, and in conspiracy, by inter alia, constructing, coercing, manipulating, illegal medical denial of heinous health care surgery, and engaged in extreme and outrageous medical denial conduct. Defendants intended, by subjecting plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on plaintiff, and knew that their conduct would cause plaintiff and his family, a wanton of severe emotional distress.

90.  As a direct and proximate result of defendants' medical outrageous conduct, plaintiff was injured, and has experienced and continues to experience, severe emotional distress, including fear of execution, nightmares, sleep disruption, symptoms of post traumatic stress disorder, anxiety, depression, and inability to focus or concentrate.

Wherefore, plaintiff demands judgement against defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons, for compensatory damages plus the cost of this action, and such other relief as this court deems equitable and just.

## COUNT VI

### Plaintiff's claim for conspiracy

91.  Plaintiff re-alleges Paragraphs 1 through 90.

92.  Defendants Roberto Gonzales, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael

Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons, with other unsued co-conspirators, including the owner or president of the roofing company and the other Bureau of Prisons medical personnel, supervisory, and command personnel, together, reached an understanding, engaged in a course of medical conduct, and otherwise jointly acted and/or conspired among and between themselves to deny medical care and/ or to continue said denial of medical surgery, to maliciously deprive plaintiff of a right to proper medical treatment, and to intentionally inflict severe emotional distriss on plaintiff.

93.   In furtherance of this conspiracy or conspiracies, the defendants named above, together with their unsued co-conspirators, committed the overt acts set forth above, including, but not limited to, those set forth in Paragraphs 1 through 92 above.

94.   Said conspirac[ies] and overt acts were and are continuing in nature.

95.   Defendants and their co-conspirators, the owner[s] of the roofing company, overt acts, as set forth above, which were committed jointly and/or while consp-iring together to deprive plaintiff of good health, medical care, proper surgery, medication, falsifying medical records, maliciously and intentionally inflicting emotional distress on the plaintiff, constitute the tort of conspiracy as set forth above.

Wherefore, plaintiff demands compensatory damages, jointly and severally from defendants Roberto Gonzales, Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Q. Byrum Hurst, Jr., Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and Bureau of Prisons, and because these defendants acted in a malicious, willful and/or wanton manner toward plaintiff, for punitive damages, plus the cost of this action and whatever additional relief this court deems equitable and just.

## COUNT VII

[Federal law respondent superior claim]

96.   Plaintiff re-alleges Paragraphs 1-51 and 52-95.

97.   Defendant Bureau of Prisons was the employer of defendants Harley Lappins, Dennis Smith, Janice M. Killian, Pete Hernandez, D. Tharp, Suzanne Hastings, Wayne Hortman, Willie Contreras, Reuben Borrego, Ismael Jacquez, Brad Eskridge, Richard Peckham, Chuck Gray, Jesus Gonzalez, and at all times relevant and material to this complaint.

98.   Defendant Roberto Gonzales is the Attorney General of the United States, who has control of the Bureau of Prisons and at all times, relevant and material to this complaint.

99.   Defendant Q. Byrum Hurst, Jr., a private attorney, who was retained by plaintiff to file civil suit against defendants for violating plaintiff's medical rights, who failed to do so by allowing the tort claim statute of limitation to run its toll, and further causing the court to dismiss the claim in its entire form.

100.  Defendant Q. Byrum Hurst, Jr., committed the acts alleged above in violation of the law and the rights of plaintiff and in the scope of his employment as an attorney at law.  Defendant Q. Byrum Hurst, Jr., got in bed with the government and sold out his client.

101.  This defendant violated plaintiff's right to a fair trial, and to confront witness for and against him and to have his day in court.  Not only did defendant Q. Byrum Hurst, Jr., got in bed with the government and it's defendants, he sold plaintiff out.

102.  Plaintiff requests that this court orders the defendant, Q. Byrum Hurst, Jr., to pay to plaintiff, personally, the sum of ten million dollars [$10,000,000] for violating plaintiff's rights to effective assistance of counsel, and malpractice, and for selling plaintiff out to the highest bidder.

103.  The defendant Hurst, committed the acts alleged above, under the authority

of the state bar and laws of Arkansas.  Plaintiff prays for judgement against

the private contractor or roofing company, in the amount of thirty million dollars

[$30,000,000].

Wherefore, plaintiff, pursuant to Texas state laws, and otherwise,

pursuant to law, demands judgement against the defendant, Bureau of Prisons and

each Bureau of Prisons defendant, in the amounts awarded to plaintiff Galindo, the

sum of four million, five hundred thousand dollars each, individually, jointly and

collectively.  And also further attorney's fees, costs and interest, and whatever

additional relief this court deems equitable and just.

Dated September 10, 2007

Jury demanded on all counts.


Respectfully submitted,

Rojelio Roger Galindo
P.O. Box 74184
Baton Rouge, LA 70874-4184
c/o Attorney Services of Louisiana, Inc.
Plaintiff Pro-se

08-627

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| *Rojelio R. Galindo* | *Roberto Gonzales, et al* |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF *88888*
(EXCEPT IN U.S. PLAINTIFF CASES)

*Pro Se PR*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
*# 28523-077*

Case: 1:08-cv-00627
Assigned To : Huvelle, Ellen S.
Assign. Date : 4/9/2008
Description: Pro Se General Civil

JURY ACTION

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
    Plaintiff

☐ 3 Federal Question
    (U.S. Government Not a Party)

■ 2 U.S. Government
    Defendant

☐ 4 Diversity
    (Indicate Citizenship of Parties
    in item III)

## III CITIZENS

FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

## ☐ E. *General Civil (Other)* OR ■ F. *Pro Se General Civil*

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability<br><br>**Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157 | **Immigration**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus- Alien Detainee<br>☐ 465 Other Immigration Actions<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>■ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant | ☐ 871 IRS-Third Party 26 USC 7609<br><br>**Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc. | ☐ 460 Deportation<br>☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act) |

(35)

| □ **G.** *Habeas Corpus/* *2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ **K.** *Labor/ERISA (non-employment)*<br>□ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ **L.** *Other Civil Rights (non-employment)*<br>□ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ **M.** *Contract*<br>□ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ **N.** *Three-Judge Court*<br>□ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
● 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 USC 1983

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint  **JURY DEMAND:** ● YES  □ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction)  □ YES  ⊗ NO  If yes, please complete related case form.

**DATE** 4.9.08  **SIGNATURE OF ATTORNEY OF RECORD** NCD

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd

